LEVATINO COMPANY, Inc., Libellant-
Appellee,

v.

AMERICAN PRESIDENT LINES, LTD.,
Respondent-Appellant.

No. 268, Docket 30160.

United States Court of Appeals
Second Circuit.

Argued March 9, 1966.

Decided March 29, 1966.

William Warner, of Symmers, Fish &
Warner, New York City, for respondent-
appellant.

F. Herbert Prem, of Bigham, Englar,
Jones & Houston, New York City, for
libellant-appellee.

Before SMITH, HAYS and ANDER-
SON, Circuit Judges.

PER CURIAM.

On the first appeal[1] of this case, 337
F.2d 729 (2d Cir. 1964), this court de-

1. This is without reference to a subsequent petition by the appellant for a mandamus, denied without opinion by this court on March 29, 1965, which had nothing to do with a disposition of the case on its merits.

cided only that the delivery of the shipment of chestnuts in question, consigned to Levatino Company, Inc., had not been a "proper delivery" for purposes of the Harter Act, 46 U.S.C. §§ 190, 191. We said there:

> "We do not determine here the extent of the damage from freezing. The District Court judge recognized, and we agree, that a good deal of conflict exists on this issue; he, therefore, expressly disclaimed any intention to decide anything but liability. The extent and amount of damages, therefore, are left open for the commissioner to determine." 337 F.2d at 730.

On remand the district court referred the case to a Commissioner for findings concerning "the extent of damage" to several lots of chestnuts from freezing on a dock in New York Harbor. At the proceedings before the Commissioner the appellants sought to introduce evidence on the question of whether or not there had been freezing damage to certain of the chestnuts, but the Commissioner refused to hear the proof offered because of his assumption that the question of damage had been foreclosed by the findings and conclusions of the trial court and by our decision in the prior appeal. He, therefore, simply determined the usual selling price of undamaged chestnuts, and reported to the district court the difference between that sum and the sale price of the damaged chestnuts at an auction. The resulting figure of $13,-160.52 was fixed as the amount of damages.

The Commissioner and the court below misconstrued the decision of this court on the former appeal. We specifically noted that the matter of the "extent of damage" was a subject of "a great deal of conflict," and stated that we intended to adjudicate only the issue of liability, and not the extent of spoilage or the dollar amount of damages. In effect, we affirmed the district court on the issue of liability but remanded the case for further hearing and findings by the Commissioner on the issue of the extent of damage and on the issue of the money damages to be awarded.

The conflict over the extent of damage stems from the fact that two distinct lots of chestnuts were involved: one described in bill of lading #4 and the other in bill of lading #36. Although the award of damages assumes the spoilage by freezing of the chestnuts in bill of lading #36, as well as those in bill of lading #4, the trial court never made a specific finding that the chestnuts of bill of lading #36 were destroyed by freezing. The chestnuts under both bills of lading were sold at the same auction, although only the sale of those under #4 was advertised. Upon remand for a rehearing the Commissioner will take evidence on the damage from freezing, if any, suffered by the chestnuts in bills of lading #4 and #36 and make findings thereon, and determine the amount of compensatory damages due for any loss suffered by the libelant.

The respondent also unsuccessfully sought to take the deposition of another consignee of chestnuts from the same shipload, whose chestnuts were not spoiled by freezing, for the purpose of establishing by implication that the chestnuts under bill of lading #36 were not frozen. The district court, on motion of libelant, vacated the respondent's noticing of the deposition on the ground that the testimony sought was related to the issue of the propriety of the auction sale which the court had already passed upon. If, however, the evidence showed that the chestnuts of lot #36 were sound and unspoiled, their sale at auction as damaged produce certainly was improper and the sale price could not be used as an element in determining the damages.

The testimony sought in the deposition would be admissible if a foundation were first laid showing that the chestnuts in question had been handled in an identical fashion and, so far as material, under identical circumstances with those of the deponent. 2 Wigmore, Evidence §§ 438, 439 at 418–422 (3rd ed. 1940).

Although neither party appealed from the amount of the fee awarded the Commissioner, the taxation of the fee to one of the parties is one of the issues before us. As a Commissioner is a specially appointed officer of the court, we will not order a party to pay compensation which does not appear to be reasonable. Glidden Co. v. Hellenic Lines, Ltd., 315 F.2d 162, at 164 n. 1 (2d Cir. 1963); cf., Petition of the City of New York, 332 F.2d 1006, at 1009 (2d Cir.) certiorari denied sub nom. City of New York v. Bernstein, 379 U.S. 922, 85 S.Ct. 277, 13 L.Ed.2d 335 (1964). We are of the opinion that $2500 for the past services rendered in this case is excessive. The fee is therefore reduced to $750 and is taxed to the appellee.

The judgment is reversed and the cause is remanded for rehearing.